Good morning. My name is William Davis. I am appearing on behalf of the Trump Interest Legal Commission, and may it please the Court, I believe I reserve five minutes for rebuttal. This is a case that was brought to the floor incidental to the, or pursuant to, the public closure provisions of the National Voter Registration Act, would be section AI1. The documents in question are documents which relate to the determination of registration of individuals and the removal from the registration rolls by virtue of a finding of non-citizenship. Mr. Davis, if I could ask you at the outset, other than voter registration applications, what exactly do you say you are due that you have not received? It's very hard to tell. It's very hard to tell going through here what documents you want and the basis for the entitlement. Working backwards, the basis for the entitlement would be the plain language of statute, which requires the that were generated with respect to the implementation of programs or activities related to list maintenance. And the citizenship verification clearly falls within the ambit of that definition under the statute. And the documents in question would be whatever was received by the agency upon which they made a citizenship for verification purposes. We never got to the stage where there were particular documents that were identified at all because what the court did, but crafted an exemption, the statute, based upon the notion that the was some form of abuse, and then concluded that these documents, whatever they are, because we don't know, would fall within the ambit of that exemption. It's our position that that exemption, number one, does not fall within the statute. The statute only has two exemptions that it's been recognized. Well, it just seems very difficult for us to apply this statute when we don't know the documents or what the documents contain. We're just kind of guessing hypothetically. I mean, it seems like to me that this case would have been much better presented if the parties had gone to the district court and you'd at least identified the documents that could be available. So then that both the district court and this court could make some judgment about whether or not there should be documents released or documents withheld. I, we agree with that. And the problem is, is that the documents were identified by the state. So we requested was very, there was no specific identification. Like in the, in the project vote case, at least there was a determination of documents contain social security numbers. They redact the social security numbers and cleared up any infirmities with regard to production of documents. In this particular instance, we never got to that phase. What we got was the trial judge made this, created this exemption, which basically had no limiting principle whatsoever and was subjective. And we're in a situation where we don't know what we don't know by virtue of the fact that we never went beyond the 12B6 motion practice. Okay. But Mr. Davis, I think what Judge Agee is asking you and something that's of concern to me is it seems like your request has no limiting principle. What does the statutory language mean? All records of programs and activities. Do you have any authority for what that statutory language means? Because we're going to have to make that determination. And it seems like you're just saying it's everything we want. And I would have something more specific. So could you help us and guide us in that respect? I would point the court to the project, this court's 2012 project vote versus bond decision. And on page 331, it makes reference to the particular document provision of the National Voter Registration Act. And it basically says without verification of an applicant's citizenship, age and other necessary information provided by registration application, state officials would be unable to determine whether that applicant meets the statutory requirements for inclusion in an official voting list. And it goes on to say, excuse me, what page are you reading from? It's page 331 of the first thing. Mr. Davis, you're sort of out of context. What the project, what the court was saying there was describing why receiving a completed registration application matched perfectly with the language of the court saying that, well, you need a completed registration. That's certainly a part of the process and the task of maintaining the list. But we're going back to Judge Agee's question and Judge Keenan's follow up. You don't have before us what you want there. They were looking at a completed application registration and said, looking at that, the language was plain as it is statute. Didn't say that for every request. Well, we don't have any context for it. Go ahead. I'm sorry. This specific request were documents regarding registrants who were identified as potentially not staff citizenship requirements for registration from any official information source, including information obtained from various agencies. And then there's a request where the specific registrant that requests removal from the voter rolls by virtue of an issue relating to non-citizenship. So those were the two requests for the court. And then I'd like, well, if I could, I mean, was that done through discovery? I mean, did you submit interrogatories to the state and ask them to identify all the documents, at least generically, that might fit within these requests so that you would have some frame of reference? It was not done through discovery. It was done through requests prior to the court dismissed the action on a 12b6 motion. So it never got to the discovery phase. Are you asking for a list of names? No, we're asking for the... Potential non-citizens. What are you asking for? Well, we're asking for the, where there are determinations of citizenship, and there are registrants that are removed from the voting roll. We're asking for the underlying documents that would reflect the activity and the program that results in that administrative act. You want law enforcement records then, essentially? No, we're asking for what the board of... Okay, just one sec. Aren't these people under investigation and with potential criminal consequences? And it seems to me, I've been struggling to figure out whether there's any other law enforcement investigation involving potentially felonious conduct that's got to turn over its file. And it seems to me that that's what you're asking for, is for the Board of Elections criminal investigation file. We're not asking for a criminal investigation file. What we're asking for are what basic documents they would rely upon in removing red print for citizenship or non-citizenship reasons. And the remedy isn't necessarily a blanket denial of those documents. To the extent there's information in those documents would otherwise be sensitive or render them vulnerable to abuse, redacted. We're submitting here, we never got to this point because the 12B6 motion was granted. In answer to Judge Agee's question a little while ago, I'd like to point back to on page 31 of the... I'm sorry, it's 335. The scope of public disclosure provision, the NVRA is pretty much articulated there. It says, finally, the fact that Section 1 or 8IL very clearly requires that all records be disclosed brings voter registration applications within its reach. As this meaning of all is a term of great threat. So when you go on into the statute itself, there are two exemptions. They don't relate here. So the Congress made a determination, certain things are exempt. And trial court in this particular case crafted another exemption that is simply has no limiting principle. And this court in the Project Vote case found that the way to remedy that is through redaction. And that was the Social Security motion. I'm sorry, in Project Vote, though, it was the applications themselves. It wasn't the underlying material, was it? It was the applications themselves, that is correct. Our position is, and we believe that it would be supported, that it includes anything that relates to the implementation of programs or activities of list maintenance. There could be any number of different kinds of documents that are generated, incidental to a program or an activity of list maintenance. And Mr. Davis, is your point here that the district court acted prematurely? Project Vote was a summary judgment decision. And this is not. I mean, what specifically are you asking this court to do? Asking this court to make the entry of an order dismissing on 12B6 grounds, remanded for the purposes of conducting appropriate discovery. And to the extent that the district court feels that there is something uniquely sensitive that needs to be protected, it can be done through the process of redaction, or it can be done through the But we simply haven't gotten to that phase at this point because of the entry of the order of dismissal under 12B6. That's the relief that we believe that would be appropriate under these circumstances, especially given the threat of the interpretation of the public disclosure provision of the NBRA. So you want, for example, information on everyone who was flagged for perhaps not being a proper citizen, not being a citizen who registered, tried to register, or registered? We are asking for the information that relates to the removal from the registration form. What information do you mean? The letter was sent, we have a citizenship, one way or the other. It is publicly available already, isn't it, Mr. Davis? People who are removed for non-citizenship? But not the underlying documents as to why. So if you want to know why they are not citizens, that's because, I mean, it's pretty much by statute, right, why you're not a citizen. Right? You weren't born a citizen and you have not been otherwise naturalized. There could be any number of reasons why someone would be removed on the issue of citizenship or non-citizenship or maintained. It could go the other way. There could be an inappropriate removal. And it's just that these documents all fall within the ambit of what is discoverable under the statute. And again, I would like to point this court... But that's not verified by Project VOTE's ruling, not the holding of Project VOTE. Well, they were looking at a very specific request and it said, are you familiar with the part of Project VOTE that dealt with the move and why it was protected in terms of privacy? In other words, information that's being in the process of being submitted or requested and that distinction? Yes. And I think the remedy of doing that was through redaction. Yeah, but you want the requesting and the submitted. Project VOTE was only looking at what was submitted, which is your completed application. But you want whatever they requested from that person in their response too, right? Yes. And I believe that consistent with the intent behind the statute, which is one of transparency and accountability, that information will explain what the process is of the removal as opposed to just the fact of removal. But that will put no limitations on privacy at all. And if the point is, whatever the reason, they are no longer on the road. Well, for example, they may say, well, for example, HIPAA information may have come up. Well, you said on this day you were doing this and they submitted some medical records, for example. If you're on the requesting side, you want everything that might be in that complete response, bevy of responses to that inquiry they made as to whether or not you are a citizen. There will be no limitation on privacy. And that's what the project VOTE said. That's why MOVE was protected because it was only what you submit. Basically, what you submit as your application, but you want everything they may have requested from the law enforcement officer, right? No. The problem at this point is in the 12B6 motion to dispense contact, don't know what we don't know. The documents, we don't know what the universe is. Clearly, if things do impinge on rights of privacy, project VOTE basically says you need to balance those interests. Okay. Let me ask you here, Mr. Davis, if I could. Let's change the context away from citizenship and let's talk about, let's say it's a mental health issue and whether someone has the mental capacity to function. And what if the State Board of Elections has asked someone if they have reason to believe that this person is mentally incompetent or at least was judged incompetent months earlier and needs to request an update on the status. And somebody wants to submit their doctor's letters as to their mental abilities, what kind of medicines they're taking. It seems to me under your position, all of that would be discoverable because it would go to whether they are potentially ineligible to vote. It seems to me that, see, what I'm concerned about is if we agree with you, what else are we agreeing to? Everybody's life, it seems, would be put in the public view. I guess I'm not making myself as clear as I should. We're not asking that there be an unbridled, unlimited disclosure of documents upon request. What we are asking, though, is for a process whereby the documents can be identified and to the extent that there are documents, as you suggest, those may be protected. The quasi-vote decision itself, and this is at page 338, it says, we do not think appellants' privacy concerns are unfounded. By requiring public disclosure of personal information, Section 8IL may conceivably inhibit voter registration in some instances. However, this potential shortcoming must be balanced against the many benefits of public disclosure. In the context of this case, and in the 12B6 determination, we never had an opportunity to balance those interests. And that's our position. And I see I've overstayed my welcome here on the side, but I appreciate the additional help. If I have any further questions, I'm happy to park. Thank you, Chief Judge Gregory. I may have pleased the court. Ryan Park from the North Carolina Department of Justice on behalf of the North Carolina State Board of Elections. In this case, PILF has requested the identities and personal identifying information, including sensitive documents such as passports and birth certificates of individuals who are subject to a law enforcement investigation for possible criminal voter fraud. The State Board of Elections is under a statutory duty to investigate voter fraud or report possible violations to district attorneys. And as PILF was informed before it filed this lawsuit, their information requests overlap with a federal criminal grand jury investigation that has been sealed since January of 2019. Well, Mr. Park, the district court determined that that was moot based on its underlying ruling, so it did not need to rule on a motion to seal and a motion to stay, if I'm remembering that correctly. That's correct. But as I understand what your opposing counsel has asked for, and maybe I didn't, he wants this to go back so that there can be discovery to identify whatever documents there are and then have the district court address in the first instance whether they're entitled to some, all, or none of those documents. And if they're entitled to documents, what parts of the documents that they would be entitled to see. So it seems like to me at this point that the parties are asking the appellate court to engage in a lot of theoretical conjecture as to what the statutes may or may not apply to when we don't know what the basic underlying factual background is. So I would make two points, Your Honor. First is, as you well know, that there was an ongoing consultation process before PILF filed this lawsuit where the board disclosed a vast trove of information, everything that it could identify that did not reveal law enforcement targets, law enforcement sources and methods. And we gave the 2016 audit report, we gave an information file that had every single information on voter history for every single in the state of North Carolina, which included voters that had been removed and the reason for removal at that time. But to the extent that information overlapped with a law enforcement investigation, we did not disclose that information and that led to this lawsuit. So we are already at that stage where the information that they are requesting that we have not disclosed would publicly reveal the identities of individuals who are being criminally investigated. And as the Supreme Court said in Douglas Oil, that would subject... Well, but you don't have a ruling from the district court yet as I understand it to that effect. I mean, as I read the district court's order here, it just says it doesn't matter what these documents are, you can't have them. And it doesn't reference the law enforcement part that comes up separately. And that may very well be a determinative ground. But I don't see that you've got a ruling from the district court on any particular documents or the relationship to a law enforcement exemption. I don't think that's quite right, Judge Agee. I think that the district court identified as the uniquely sensitive and vulnerable to abuse information as the identities of the people who are being investigated. And that has always been... All right. So where do we find that? Where is that in the order or opinion or somewhere? Where do we find that in the record to know that that's accurate? Well, what Judge Boyle said is that the disclosing the identities would raise the specter of violations and possible criminal felonies. And that implicates this broader area of law. If there's any established principle in this area of law, it is the fact that one has been investigated or is being investigated for possible crimes, is uniquely sensitive and vulnerable to abuse. And that was the fundamental basis of Judge Boyle's order, that if one has been being investigated, that raises substantial privacy interests as the Supreme Court has recognized in Douglas Oil and many other cases. There are legions of cases across the federal appellate courts where they have been emphatic. The Fifth Circuit in Briggs said it was disingenuous and frivolous to say otherwise, that whether you have been the target of a law enforcement investigation is not a privacy interest that implicates the constitutional right to informational privacy that this court recognized in Walls, as well as the Privacy Act and the Driver Privacy Protection Act. Sorry, yes. Okay. Mr. Park, do you object to releasing the applications for the individuals who have been removed? Yes, we would, Your Honor. And here's why. What is the information? I had to pull the application off the website. I didn't find in the record any particular applications. And I'm assuming that the application that's on your website is up to date and accurate. What is there on this that you object to as uniquely sensitive for people who have already been removed? So the fundamental issue here is their names. That's always been the fundamental dispute between the parties. And because if you reveal the names, you reveal information that has been gleaned from driver's records, because that's how you start this process. You say, who has a non-citizen designation code in their driver's license application? And then you go to the federal databases, which are protected by the Privacy Act, and who has a non-citizen designation code there? So the source of the information are these two federally protected databases, which by the way, neither of which were implicated in Project Vote. There was no federal source for, or federally protected source of information in that case other than Social Security numbers, which of course were ordered to be redacted in Project Vote. Where do we have any of this in the record though? I don't know whether you're claiming the board itself is a law enforcement organization, whether there are regulations or statutes or adopted procedures that govern what the board does with this information as far as referring it to a state or federal prosecutor, or whether this is just a policy preference that the board has. I don't know where any of that is in the record, and how we are, or the district court is to make a determination unless it has that information. So I would direct you, Judge Agee, to the joint appendix. It's starting at page 25, where that is our audit report, where we detail the process by which we verify citizenship information. And that information is all there in terms of the three-step process that the board uses. And there is a statutory obligation, I can give you the site, it's North Carolina General Statute 163.22, that the board is required, it says the board shall investigate possible instances of voter fraud and refer them for prosecution. But here we are in an incredibly unique situation where there is a sealing order entered by the district court that says this information, information that relates to the grand jury information is so highly sensitive and vulnerable to abuse, I'm going to seal this entire case for two years. And I don't know if there could be a situation where it was more stark that this information is uniquely sensitive if there has been a sealing order. And I think that order, even putting it aside, exposes the dramatic reach and I'd say alarming breadth of PILF's position here, which is that if they were informed that there was a sealing, that there was a federal investigation. Well, all that may be true, but it kind of brings me back to the threshold questions. We don't know what any of these documents are that the foundation says it If we had a list of what these were, that would make it a little bit easier for us to make this determination. Your point seems to be, it doesn't matter what they want, they can't get it. Your opposing counsel seems to be saying, well, we get everything, but we don't know what these are. So respectfully, that's not correct, Your Honor. The dispute is about the names. It has always been about the names of the people. And if the position that PILF takes today is that the names of individuals who are targets of a law enforcement investigation have to be redacted, well, that's a completely different case, because that would alter substantially the privacy interests that are implicated there. But we gave examples, and this is in the record in the joint appendix, of what we produced prior to this lawsuit being filed. We gave the correspondence that had been sent out to all the people who had been flagged with names redacted. I mean, I guess we could give a copy of every single letter and have every single letter be redacted, but we just gave one copy with the name redacted. There are no documents that have been identified to us, or that the board has flagged in its own investigation, that it can produce other, that would not provide the names of the people who are being identified. And that has always been fundamentally what this case has been about. And the district court basically ruled that you've given everything but the names, and the names are under the criminal investigation seal, so that's why I grant, I guess, the motion is missed, because there's nothing else to resolve. Yes, that's our understanding of the district court's order. We obviously asked for the case to be stayed, to allow the federal investigation to conclude before having to reach these issues. But I think that in this situation, even if we assume the court order is gone, the position of Pilfen, and it may have been altered today, and so you could speak to Mr. Davis about that, but the position that has always been that because of this Section 8i in the NBRA, that unless it's one of the enumerated exceptions apply, then it has to be disclosed no matter what it is. So it could be protected medical information, it could be information that is classified by the federal executive branch, because it relates to national security information, and that is not a theoretical concern, just like medical information, that there are, you know, public records of cyber security intrusions and voter integrity efforts that are, you know, relate to voter list maintenance, and there is a classified Department of Homeland Security report that relates to North Carolina and cyber security intrusions that we have received, and I think under the plain language of Section 8 of the NBRA, you know, under Pilfen's position, that would have to be disclosed without redactions. And so I think if there is a general rule that we would propose to the court, it would be that when there are multiple, that the NBRA establishes a general rule of disclosure. We do not dispute that. We are firmly committed to transparency, and I think as Pilfen has recognized, we provide more information, the North Carolina State Board of Elections provides more information on its activities, on its voter file, than most but it really puts us in an impossible situation when there are multiple inconsistent obligations that are imposed on the board, and so we would say that Section 8 requires us to disclose everything unless there is some cross-cutting legal obligation such as found in the privacy statutes. Yes, Your Honor. Okay, so Mr. Park, I'm sort of, you almost anticipated my question, I guess, because I was going to ask you to tell me how you would write the opinion of this court. How would you interpret the language of the Act regarding all records of programs and activities? What does that mean? Let's say, just say you're the judge, because we've got to think about not only this case, we've got to think about the universe of other cases that are out there. Yes, Your Honor, I agree it's a difficult interpretive task because you can't read the statute in isolation. I think as Justice Scalia said in Branch, which we've cited, that it is the most rudimentary rule of statutory reconstruction that you don't read statutes in isolation, you have to read them in context, and so I think reading this statute alongside the other federal statutes that apply, and of course if there are, you know, intervening constitutional limits, which this court recognized in Project VOTE, that has to be interpreted as part of that exercise. So I would just say again that all means all, unless there is some other cross-cutting obligation found in some other source of law. And frankly, as I've been preparing for this case, you just keep on learning of more and more potential situations where there's some other source of law that could impose a limit on what can be disclosed. I think Your Honor's thought of ones that I hadn't in terms of medical information, but you know, there's classification procedures. There's no exception in the NVRA, in the text of the NVRA, that says except when there's a court order. And at least as this case was initially litigated below, Pell's position was that, you know, if they serve a records request on us, and even if there is a nondisclosure order that has been entered by a federal court that overlaps with the request, we still have to give the information and risk contempt of the court order. And so I think it would be difficult to fashion an opinion that comprehensively addressed which documents may not be disclosed. And I think, you know, that's the wisdom of at least part of Project VOTE at the end. It said we do not attempt to address all the possible situations in which issues of implementing the statute can arise in the future, because there's just any number of situations that could arise. So I think a very narrow way to resolve this case is that when it overlaps with an ongoing criminal investigation, and especially in the circumstances when there's an actual sealing order that overlaps with the order, that the request does not fall within the scope of Section 8i. Okay. Mr. Park, help us out again, though. The Project VOTE, the sentence after the sentence you brought up, he declined to address every particular question. The next sentence says, we do hold, however, that complete voter registration applications are subject to and you're saying that they are not, with regard to those who are, excuse me, are potentially under investigation. There were no people potentially under investigation in Project VOTE for committing felonies, or maybe committing felonies. How do we reconcile that in writing our opinion? Yeah, no, I think that is incredibly difficult, because if we disclose the applications themselves, which we agree are subject to disclosure in the general case, but if we only include the list of people that are subject to a law enforcement investigation, we're of course disclosing their identities. It's almost like if a commercial marketer, you know, this arises in the DPPA context. If a commercial marketer wanted information in all the list of names, that doesn't say, you know, this person has blue eyes, but what it does say is, you know, these are the people who in the driver's records have said they have blue eyes, and so giving the list of names, the list of voter applications themselves would disclose the confidential information. So you, yeah, so you agree, then, in writing this opinion from your perspective, we would have to distinguish Project VOTE, then? Yes, your honor. Okay. Yes, and I think, you know, as I've already mentioned, I think there are three huge ways where this is different. I think the nature of the privacy interest, there was no, you know, sense in which the people whose names were going to be identified, whose voter applications were going to be identified, would have been implicated in criminal activity, would have been, you know, publicly disclosed as the targets of a law enforcement investigation. The second is, because of the source of the document. Well, counsel, even if we agree at that point that, you know, there's a law enforcement exemption, the, as I understand, part of the purpose of this NRVA is for a verification, so that you have this group of individuals that are subject to some form of law enforcement investigation. And at this point, there's a blanket exemption for all names. And I thought part of the point of the statute was there had to be some way to verify that that's accurate. How does that happen in this circumstance? I mean, how is anybody to know whether there's a list of 1,000 names and the board included 500 that aren't part of the law enforcement investigation? No, I, so I agree, Your Honor, that there is a true conflict here between the transparency goals of the NVRA and the privacy interests of individuals and the need for law enforcement investigations to be confidential. So I don't think that there is an easy way to other than to say... Why wouldn't you let the district court in the first instance look at whatever the list is, and if it's all documented that these are subject to a criminal investigation, well, that's the end of it. But at least that way, even if that's done ex parte or under seal, but at least that way you would know that the list is accurate. So we would not be opposed to, you know, in-camera review of that kind. But I think the final point I'd like to make, as I see my time is running out, is that, you know, the Supreme Court, other courts, this court has recognized that whether you have been investigated and then, you know, cleared is still private information that substantially intrudes on your privacy rights. And so following up with my last question, would it be acceptable from your perspective to remand to the district court for the district court to determine whether there is any information that does not disclose the identities of the people? In other words, if, you know, people were given a number and all the identifying information were removed, I think what Judge Agee is saying is, you know, if we've got a situation where some information maybe could be disclosed, maybe that you haven't thought about or haven't considered, as long as the identities are protected, could we give the district court that job from your perspective? I think that, you know, we are committed to remand. I don't think remand here has been an impossible one because we feel we're genuinely subject to competing legal obligations. If there were a remand for redaction of, you know, to see if there were additional documents that could be produced but redacted, you know, that's not something that we oppose in principle. But what we firmly believe is that the identities of anyone who has been investigated and the personal identifying information, you know, they ask for is not subject to disclosure. And I would, you know, also just note that, you know, I'm limited in what I can say, but it's not clear that, you know, it's not clear that a remand of that kind would be consistent with the district court's sealing order. And so, you know, I think the court would just have to consider whether a remand of that kind would, you know, implicitly dissolve that sealing order in some respect. So it's just a very complicated scenario. But what I can represent is that the information that we have given is what the board in good faith believes is everything that does not disclose identities. So your position is then that you're given everything other than the name that you would have in a completed registration application, is that right? Yeah, and the personal identifying information that would, you know, track back to like an address. Like an address, right, which is clearly the name. But other than that, that's either the name or directly translates into the name you've given what would be what was under project vote and completed registration information, correct? That's right. That's right. I mean, we didn't produce redacted copies of every voter registration application with everything redacted. You know, if project vote wants that, I think we could work with them. But we gave, you know, examples, illustrative examples of everything that we think falls within the scope of the request that we have that would not identify. Does the seal order cover everything you have not given? Well, so I actually, I don't know if I can answer that question just factually. Okay, well, I don't want to go into something that, you know, gets you in trouble about the seal. So maybe I withdraw it because it is a little touchy. I can see how that may be problematic. But the point is, though, that the motion to dismiss is technically without prejudice anyway, isn't it? Because you can always bring a request for documents, right? So that's correct. You know, they would go ahead. Yes, no, no, I think, you know, they could bring a further request. And, you know, once the grand jury concludes, and then we could talk about this without that complication. I would, you know, just emphasize that, of course, the same judge as a practical matter, is overseeing both cases, he's been overseeing the investigation for two years. And so, you know, I think that what I can say is that we I don't want you to go there. But but even more so reliable, because the judge is handling both criminal investigation at the judicial side, as well as this case, civil. I understand, you don't need to go and think further there. Yeah, but but rightness of a case in terms of that's the plainest problem in it. I mean, turn whether the case is justiciable at this point. Right. I suppose that was that was the basis of the motion dismissed. So you know, this of course, there's nothing else to do right now, unless we're going to mandate us to district court and tell them, withdraw your seal order. I don't think anybody's asking us to do that. Otherwise, go ahead. I don't think so. Judge Keenan. Mr. Park, I know I said I was asking you my last question. So my apologies. But I guess the one thing I'm not really clear on as we conclude here with your presentation is, what about the names of people you have investigated and have cleared the people who were okay, you've determined their citizens, I imagine there are a information was stale. I've heard a lot of that information is stale. Have you provided that information? So we have not. And thank you for that question. Because I really do actually think that that exposes the most difficult issue in this case, which is whether someone who has been subject to a law enforcement investigation, and then not charged or cleared, it has a privacy interest in that, that fact that they've been subject to investigation being remaining private, I think, you know, the Douglas oil case, that is a grand jury case. And that says that, you know, grand jury proceedings are secret, to assure that people who are accused, but exonerated are not held up to public ridicule. I think that whether you have been subject to a law enforcement investigation, and even cleared, is uniquely sensitive and vulnerable to abuse. And we know that because of honestly, the circumstances in this case, that there have been instances where people who simply because they failed to check a box, they failed to notice a box saying, are you a citizen in Virginia, that's how their forms used to be structured. You know, they are flagged as possible non citizens, and then their names and identities have been published, along with their birthdates, their addresses, their email addresses, their phone numbers, in some circumstances, or social security numbers, along with reports saying, these people are felons, they should be prosecuted, they should be deported. And that and if they brought suit, suing the plaintiff in this case. So I think the final point I'd like to make, if I may, and I'm over, is that, you know, the Virginia incident really shows the difficult situation that a Board of Elections is in. Because after those citizens sued the plaintiff here, the PILF filed a third party complaint against the Virginia Board of Elections, saying that they are liable for the defamation and the Voting Rights Act that, you know, PILF was being accused of, because they are the ones that provided the information to PILF under Section 8i. And even though the Board said that the majority of these people are actually citizens. And so we really are in a difficult position. But we think that whether you've been subject to an investigation, and even cleared, is still confidential. All right, thank you, Mr. Park. Mr. Davis? Just very, very briefly, I think Council has overstated our position. We are simply looking to have the opportunity to have whatever records that would be responsive, examined for the purposes of balancing the interests of privacy and the interest of the program and activities that they engaged in regarding citizenship determination verification. And the audit that they provide us is nice, but it's a summary document. It doesn't address the underlying program and activities and the actual implementation of it. So what we're asking is that this go back to the trial court, that there be a determination of what the documents, what the relevant documents would be, and allow an arbiter to determine or the court to determine whether or not the privacy interests prevail, or the disclosure interests prevail, and proceed accordingly. That's what we're asking. Mr. Davis, then, would you find acceptable a remand to the trial, from your position, a remand to the trial court to make a determination of any documents that do not, or portions of documents that do not reveal a person's identity? Yes. I think that with regard to ongoing criminal implications, I mean, there may be some that are no longer involved in that process that I think would be disclosable. But I do appreciate the criminal investigation and an active criminal investigation that the identity could be redacted. But we, like I said before, we don't know what we don't know here because we never got that process. Well, let me ask this. I think that counsel has been really forthcoming in this. If someone was flagged 10 years ago as to their citizenship, it was determined clearly that the person is a citizen. You would want that information that that person was once flagged, a question about their citizenship? What we're interested in seeing is what the- No, that's a very specific question. You want the identity of that person? That would, yes. Why? I mean, wouldn't that be like you're looking for a scarlet letter to put on somebody? Why would that have anything to do with the integrity of the list and the validity of the list that someone was cleared 10 years ago, clearly they're a citizen, taxpaying citizen, no question, and they're a voter. You want to have that information, that name? Well, there's two different levels to this. Is that disposable? The answer is yes. You go to Voter Registration Act. It's A.I.2. And in those, the identities of individuals and what have you are completely disclosed. Whether or not in that particular context with regard to being red flagged and subject to criminal investigation, whether it's disposable, I would leave to the trial court to make a determination as to whether or not it's subject to abuse or uniquely sensitive. You just need to get that set. That's the point I'm trying to make. If there are no further questions, I appreciate the opportunity. Thank you so much, Council.
judges: Roger L. Gregory, G. Steven Agee, Barbara Milano Keenan